UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GARY DAVIS et al., | Case No. 2:21-cv-00008-RFB-VCF |
| Plaintiffs, | **ORDER** |
| v. | |
| UNIVERSAL HEALTH SERVICES Inc. et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the Court in this employment discrimination action is one pending motion: Defendant UHS of Delaware, Inc. and Defendant Valley Health System, LLC (collectively "Defendants")'s Motion for Summary Judgment (ECF No. 47). For the reasons stated below, the Court denies the motion as to Plaintiff Gary Davis's ADEA claim only and grants the motion as to Plaintiff Davis's remaining claims and as to all of Plaintiff Scott Scribner's claims.

## II.  PROCEDURAL HISTORY

On January 4, 2021, Plaintiffs Gary Davis and Scott Scribner (collectively, "Plaintiffs") commenced this case by filing a civil complaint against Defendants and Terminated Defendants. ECF No. 1. On March 1, 2021, Plaintiffs stipulated to dismiss Universal Health Services, Inc. from the lawsuit. ECF Nos. 10, 16. On March 1, 2021, Defendants filed their Answer to the Complaint. ECF No. 11. On March 8, 2021, an Early Neutral Evaluation session was set for April 2, 2021. ECF No. 17. On March 18, 2021, the parties jointly requested a continuation of the ENE. ECF No. 18. On March 22, 2021, the Court granted the parties' request to continue the ENE to May 26, 2021. ECF No. 19.  The ENE was held on May 26, 2021, before Magistrate Judge Weksler. ECF

No. 24. Plaintiffs reached a settlement agreement with Sodexo Inc., Sodexo America, LLC, and SDH Services West LLC. Id.

On July 6, 2021, the Court dismissed Sodexo Inc., Sodexo America, LLC, and SDH Services West LLC from the case. ECF No. 26. On October 28, 2022, Defendants filed the instant Motion for Summary Judgment. ECF No. 47. On December 10, 2022, Plaintiffs filed their Response to the Motion. ECF No. 52. On January 12, 2023, Defendants filed their Reply in support of their Motion. ECF No. 53. On June 23, 2023, the Court set a hearing on the Motion for July 24, 2023.

This Order follows.

### III.   FACTUAL BACKGROUND

The Court finds the following facts to be undisputed:

Former-Defendant Sodexo was contracted to provide food service for four hospitals in the Las Vegas market. On or about November 5, 2019, Sodexo was notified by Defendant UHS that it was terminating its food service contract with Sodexo for all of its hospitals in the Las Vegas market and all employees would be separated from Sodexo on February 8, 2020. In November 2019 all the management jobs occupied by Sodexo managers were posted on the UHS website and Sodexo managers were to apply for the jobs they held at Sodexo (or other available jobs) if they wanted to be employed at any of UHS' Las Vegas area hospitals.

Plaintiff Gary Davis ("Mr. Davis") is a 65-year-old white gay male who was 62 years old when he was not hired by UHS at any of its Las Vegas area hospitals in 2019. At the time, he had over twenty years of cumulative experience at Sodexo USA and its predecessors in interest. Mr. Davis is a registered and licensed dietitian in Nevada. He has a bachelor's degree in nutrition and dietetics and a master's degree in business administration. He has been a registered dietitian since 1987.

Plaintiff Scott Scribner ("Mr. Scribner") is a 63-year-old gay white male who was 60 years old when he was not hired by UHS with any of its Las Vegas area hospitals in 2019. Mr. Scribner is a certified dietary manager, and a certified food protection and food service management

1   professional, and was a UHS certified service excellence facilitator. On January 9, 2020, Mr.
2   Scribner received a 2019 Merit Award Letter and an increase of pay of $1,925.17.
3         Plaintiffs overwhelmingly received high employment ratings from their former employer,
4   former-Defendant Sodexo, including many "exceeds expectations" reviews for each.
5         Between November 7, 2019, and February of 2020, Mr. Scribner applied for the following
6   positions at UHS' Las Vegas area hospitals: Director of Dietary Food Services at Valley Hospital;
7   Director of Dietary/Food Services at Centennial Hills Hospital; Director of Dietary/Food Services
8   at Summerlin Hospital Medical Center; Director of Dietary/Food Services at Desert Springs
9   Hospital, and Manager of Dietary Food Services at Spring Valley Hospital.
10        On November 20, 2019, Mr. Scribner followed up with an email to Jason Silk letting him
11  know that he applied for each posted Food Service Director position in the Valley Health System.
12  Mr. Silk is a Senior Director of Contract & Support Services at Valley Health at Valley Health.
13  Scribner mentioned in his email to Mr. Silk that he was aware that Mr. Silk was in town to conduct
14  interviews. Mr. Scribner asked Mr. Silk if he had some time to review Scribner's resume with him
15  and discuss any opportunities at one of the VHS hospitals.
16        Between November 7, 2019, and November 8, 2019, Mr. Davis applied for the following
17  jobs: Manager Dietary Food Services-Operations at Valley Hospital; Clinical Nutrition Manager
18  at Valley Hospital; Manager-Dietary/Food Services at Centennial Hills Hospital; Manager-
19  Clinical Nutrition at Centennial Hills Hospital; Manager-Clinical Nutrition, at Summerlin Hospital
20  Medical Center.
21        On November 8, 2019, Davis received an email from Mr. Silk stating that he had received
22  Mr. Davis' application/resume, that he was glad to see that Davis had an interest in joining UHS
23  and that he would be touch with Mr. Davis next week to schedule a meeting with him for the week
24  of November 18, 2023. Mr. Davis responded the same day by thanking Mr. Silk for selecting him
25  for an interview and telling him that he was currently in northeastern Pennsylvania assisting with
26  the affairs of his 97-year-old mother and asking if it was possible to conduct the initial interview
27  by phone or that Mr. Davis would be able to fly back to Las Vegas if needed.
28        Mr. Silk responded later that day by thanking Mr. Davis for reaching out to him and letting

him know of his situation. He said the fact that Mr. Davis was not currently in Vegas would not influence the direction of his candidacy and that based on Mr. Davis' background and reputation that it sounds like Mr. Davis was someone they would like to join UHS and that Mr. Silk would be in touch with him next week to schedule a call. Finally, when Mr. Davis did not hear from Mr. Silk by November 19, he reached out to him and let him know that he was still very interested in a position with UHS and that Mr. Davis would be willing to drive to King of Prussia (where UHS was located) to meet Mr. Silk for an interview. Davis never heard back from Mr. Silk and never received an interview and was not hired. Davis later found out that Mr. Silk hired five former Sodexo managers.

The Court finds that the following facts are disputed:

Whether the hired former-Sodexo managers were more or less qualified than Mr. Davis; whether Defendants' stated reason for not hiring Mr. Davis was pretextual because they ultimately hired many Sodexo managers, and Mr. Davis was well rated by Sodexo throughout his employment period.

### IV.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).

If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility

determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## V.   DISCUSSION

Defendants argue that they are entitled to summary judgment on each of Davis and Scribner's claims, respectively. The Court denies the Motion as to Mr. Davis' ADEA claim only. The Court grants the motion as to Mr. Davis' remaining claims, and to all of Mr. Scribner's claims

### A. ADEA Claims

The Supreme Court "has not definitively decided" whether the McDonnell Douglas framework applies in ADEA cases. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 n.2, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009).  However, as the Ninth Circuit continues to apply it this framework, so too will this Court. See Shelley v. Geren, 666 F.3d 599, 607-08 (2012).

The prima facie elements of an ADEA are as follows: (1) the plaintiff is at least 40 years old, (2) she was performing her job satisfactorily, (3) she suffered an adverse employment action, and (4) and was "replaced by a substantially younger employee with equal or inferior qualifications." Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994) (citation omitted). Whether Plaintiff relies on direct or circumstantial evidence, she ultimately must prove by a preponderance of the evidence "that age was the 'but-for' cause of the challenged employer decision." Gross, 557 U.S. at 177-78 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141-43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)) (footnote omitted).

The Ninth Circuit has "repeatedly held that it should not take much for a plaintiff in a discrimination case to overcome a summary judgment motion." France v. Johnson, 795 F.3d 1170, 1175 (9th Cir. 2015) (collecting cases). "This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." Id. (citing Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000) (internal quotation marks omitted)).

In France, the Ninth Circuit adopted the Seventh Circuit's rule that an age difference of ten years or more between the plaintiff and the chosen candidates will be "presumptively substantial,"

1  and that an age difference of less than ten years will be "presumptively insubstantial." Id. at 1174.
2  However, "[a] plaintiff who is not ten years or more older than his or her replacements can rebut
3  the presumption by producing additional evidence to show that the employer considered his or her
4  age to be significant." Id. (internal citation omitted).

5        The Court bifurcates its analysis to address each Plaintiff's claim separately.

         **a. Mr. Davis**

7        The parties do not dispute that Mr. Davis has satisfied first element of the prima facie case
8  under the ADEA since the parties agree that Mr. Davis was 62 at the time of the alleged
9  discrimination. The parties do not dispute the third element—that Mr. Davis suffered an adverse
10 employment action when he was not selected for a replacement position with UHS after his role
11 with Sodexo was terminated.

12       The parties do dispute the second element—whether Mr. Davis was qualified for the jobs
13 he applied for. Defendants argue that Mr. Davis was not qualified for the positions he applied to
14 because he was "hard to pin down" and "not where he needed to be" and that Mr. Davis'
15 supervisors shared this information with Mr. Silk. Mr. Davis argues that he had strong performance
16 reviews and that Mr. Connolly—Mr. Silk's supposed source of information about Mr. Davis—
17 avowed he never disparaged Mr. Davis or made comments about his job performance to Mr. Silk.
18 Mr. Davis also notes that Mr. Silk did not consult Mr. Scribner, who was Mr. Davis' direct
19 supervisor.

20       The parties dispute the fourth element, whether a substantially younger employee with
21 inferior or the same qualities were chosen instead of Mr. Davis (who was 62 when he applied).
22 Plaintiffs focus on the following positions.

23       The person chosen for the Manager of Dietary Food Services-Operations role at Valley
24 Hospital was 50 years old ("William Brink," a former Sodexo employee). The person chosen for
25 the Clinical Nutrition Manager role at Valley Hospital was 34 years old ("Sarah Bannoura," a
26 former Sodexo employee). The person chosen for the Manager of Dietary/Food Services role at
27 Centennial Hills Hospital was 56 years old ("Hans Weding," a former Sodexo employee). The
28 person chosen as the Manager of Clinical Nutrition role at Centennial Hills Hospital was 35 years

old ("Frank Moran," a former Sodexo employee). The person chosen as the Manager of Clinical Nutrition at Summerlin Hospital Medical Center was 40 years old ("Michael Sager," a former Sodexo employee). The Court finds that as each of the chosen candidates for these five positions were also former Sodexo managers, and, for the purposes of the prima facie case, were similarly situated to Mr. Davis.

Defendant does not make any argument that any of these individuals were either more qualified than Mr. Davis or differently qualified than Mr. Davis. Therefore, the Court finds that Mr. Davis has made a prima facie age discrimination claim.

The parties do not dispute that Defendant has rebutted Plaintiff's prima facie case. The parties do dispute whether Mr. Davis has established pretext. The Court finds in Mr. Davis's favor and denies Defendants' Motion as to Mr. Davis's age discrimination claim.

Mr. Davis can "demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112-13 (9th Cir. 2011). When the plaintiff relies on circumstantial evidence to show pretext, the Court treat direct and circumstantial evidence alike and considers both types of evidence cumulatively. Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1194 (9th Cir. 2003). Here, the record shows that Mr. Silk's stated reason in denying Mr. Davis the chance to interview for the five roles he applied to, which were offered to other former Sodexo employees, was that Messrs. Connolly and Gregg commented that Mr. Davis was not reliable because he was hard to locate and was unreachable at times. As Mr. Davis notes, however, Mr. Connelly testified that he made no such comments to Mr. Davis, that he recommended or co-signed Mr. Davis' promotion on one occasion because he had "potential." Mr. Connelly further disputed Mr. Silk's representation that they had a longstanding relationship, stating that he only joined the Las Vegas team in 2018.

It is not the Court's job to weigh the evidence at the summary judgment stage. Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). The Court finds that there are genuine issues of material facts as to this claim. Construing the facts in the light most favorable to the nonmoving party (here, Mr. Davis), a jury further could weigh against Defendants the fact that Mr. Silk at the same time admonished Sodexo for not "manag[ing] performance appropriately[]" and hired five former Sodexo employees for seven available roles at Mr. Davis' level, did not consult Mr. Davis' direct supervisor and instead consulted those also applying for roles with Defendants and who he should not have "trusted" because they had only recently become his business associates. For these reasons, Mr. Davis' age discrimination claim survives as to the five roles where Defendants hired former Sodexo managers.

### b. Mr. Scribner

For Scribner, the parties again dispute some but not all of the elements of his claim. While the parties dispute the second required element (whether Mr. Scribner was satisfactorily performing his job duties), There is no dispute that at the time of the alleged discrimination, Mr. Scribner was 60 years old. The parties do not dispute that the candidates hired for the director-level jobs that Mr. Scribner applied to were 50, 54, and 60. For the following reasons, Mr. Scribner has failed to rebut the presumption that there is an insignificant age difference between himself and the chosen applicants. The chosen applicants were not ten years younger than Mr. Scribner.

Specifically, the person hired for the Director of Dietary Food Services-Operations at Valley Hospital was 60 years old ("Richard Pierce"); the person hired for the Director of Dietary Food Services-Operations at Centennial Hills Hospital was 54 years old ("Shawn Gregg"); the person hired for the Director of Dietary Food Services-Operations at Summerlin Hospital Medical Center was 56 years old ("Charles Lovering").

Mr. Scribner has not presented any evidence that shows that the employer considered his age to be significant. The Court finds that Mr. Scribner's ADEA claim applies, at best, to the latter two positions, and the fact that Messrs. Gregg and Lovering were hired instead of him. Since Mr. Pierce is the same age as Mr. Scribner, Mr. Scribner has no age discrimination claim as it relates to Defendants' decision about who would direct Valley Hospital's food operations. Because the

age gap between Messrs. Gregg and Lovering and Mr. Scribner is less than ten years, it is "presumptively insubstantial." France, 795 F.3d at 1174. Although "[a] plaintiff who is not ten years or more older than his or her replacements can rebut the presumption by producing additional evidence to show that the employer considered his or her age to be significant," Mr. Scribner has not done so here.

First, there is the open question of to what degree and whether Mr. Silk, the hiring decisionmaker, knew of Mr. Scribner's age or had reason to know of his age. The Court finds that someone reading a person's resume can deduce age more quickly than almost any other protected factor. The Court also finds that there is no dispute that Mr. Silk and Mr. Scribner had interacted with one another, but cannot deduce from that, per se, that Mr. Silk knew Mr. Scribner was over 40 years old. But Mr. Scribner has not offered additional evidence suggesting that age was particularly weighted by Defendants. By contrast, in France, the plaintiff testified that the employer in that case preferred hiring younger workers. 795 F.3d at 1174 ("France declared under penalty of perjury that Chief Gilbert explicitly expressed a preference for promoting younger agents. [] Nicley and Salacup also testified that Chief Border Patrol Agent Aguilar preferred to promote 'younger, less experienced agents.'"). Therefore, Mr. Scribner's ADEA claim fails as a matter of law.

### B. Sex Discrimination Claims

Discrimination on the basis of sexual orientation is a form of sex-based discrimination under Title VII. Crowe v. Wormuth, 74 F.4th 1011, 1036 (9th Cir. 2023) (citing Bostock v. Clayton County, 140 S. Ct. 1731 (2020). To state a failure to hire claim based on sex discrimination, each of the Plaintiffs must show that: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably." Chuang, 225 F.3d at 1123; see also Bostock, 140 S. Ct. at 1754.

There is a preliminary dispute as to whether Defendants were aware that Plaintiffs were gay. Although certain sister circuits have held that such awareness is required, see, e.g., Woodman v. WWOR-TV, Inc., 411 F.3d 69, 87 (2d Cir. 2005) (explaining that, to defeat summary judgment,

plaintiff was obliged to offer evidence indicating that persons involved in the discrimination had knowledge of her protected characteristics), the Ninth Circuit has not so held. Nevertheless, construing the facts in the record in the light most favorable to the nonmoving party, the Court finds that a jury could find that Mr. Silk was aware that Plaintiffs were gay, because: Plaintiffs were out as gay men at the workplace; Mr. Scribner directly informed Mr. Silk that his partner was a man, and that said partner worked in the same hospital system as Mr. Scribner; Mr. Davis had mentioned to Mr. Silk that he once lived in a neighborhood where lots of gay people lived.

Plaintiffs essentially argue that they were two gay men who were out at the workplace, and that the two men who Mr. Silk consulted in deciding not to hire Mr. Davis—Mr. Gregg and Mr. Connolly, who worked for Sodexo and with Plaintiffs directly—knew that Plaintiffs were gay, and that Mr. Silk also know that Plaintiffs were gay.

Mr. Silk made a decision to not consult Mr. Scribner regarding Mr. Davis's candidacy, despite the fact that Mr. Scribner was Mr. Davis's direct supervisor for some time. Mr. Silk, did not necessarily review Plaintiffs' applications in reaching the decision to not interview them, despite their many years working at various institutions where Defendants would be setting up new food institutions and he did not independently investigate the alleged statements from Messrs. Gregg and Connelly because he trusted them, even though that Mr. Connolly himself stated he only knew Mr. Silk for a short period, and that he did not have longstanding relationships with him. Finally, Mr. Silk consulted Mr. Gregg about who he would want to hire, knowing that Mr. Gregg himself was seeking out roles similar to Mr. Scribner. It should be noted that Mr. Gregg could not be located or deposed as he no longer works for Defendants and Plaintiffs' counsel was not able to independently locate him.

Plaintiffs have, for the purposes of the prima facie case, shown that they were qualified for the jobs to which they applied. There is no dispute that they suffered an adverse employment action. Thus, Plaintiff's meet the first three elements of the prima facie case.

However, the Court does not find that Plaintiffs have "produced specific facts" with respect to the fourth element "to show that there remains a genuine factual issue for trial." Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983). To raise an inference of discrimination, Plaintiff

must at least show that the employees who were treated more favorably—i.e., those who were selected—were outside of the protected class, and that this was known to the employer. See Earl v. Nielsen Media Rsch., Inc., 658 F.3d 1108 (9th Cir. 2011); Vasquez v. Cnty. Of Los Angeles, 349 F.3d 643, 641 (9th Cir. 2003). But Plaintiffs cannot make this minimal threshold showing. Plaintiffs do not provide any evidence that shows whether the selected employees themselves also identified as gay or not. Plaintiffs argue that Defendant did not provide that information through discovery. There does not appear to be any discovery related motion practice. Therefore, it is not clear that Defendants were challenged by Plaintiffs and pushed to provide relevant information. Defendants argue that "due to the delicate nature of sexual orientation," they could not collect this information from their newly hired, former-Sodexo employees.

Even if Plaintiffs are not aware of this information, they could point to evidence that people who were not openly gay people were treated differently in the workplace more generally, or by Mr. Silk specifically. Instead, they testify to the opposite: that they had generally pleasant interactions with Mr. Silk and do not cite to deposition testimony suggesting that anyone in the workplace targeted them because they were gay. In sum, Plaintiffs have produced no evidence that Mr. Silk held any animus against Plaintiffs based on their sexual orientation. See Crowe, 74 F.4th at 1036 ("mere assertions of discriminatory motive and intent are inadequate without substantial factual evidence, to raise an issue precluding summary judgment.") (internal quotations and citation omitted); Peterson v. Hewlett-Packard, 358 F.3d 599, 604 (9th Cir. 2003) (affirming summary judgment where plaintiff's evidence in support of his theory of discrimination showed that defendant employer acted "in precisely the opposite manner."). Because they fail to present evidence in support of an essential element of the prima facie case, Plaintiffs' sex discrimination claims fail.

**C.  ADA Claim**

To state a claim for discrimination based on disability, each Plaintiff must show that he: (1) is a disabled person under the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job he seeks; and (3) was discriminated against because of his disability. Bates v. United Parcel Serv., Inc., 511 F.3d 974, 988 (9th Cir.

2007).

Defendants argue that Davis admitted under oath again and again that Mr. Silk had no knowledge of any of Davis's medical conditions; he has no evidence that anyone shared with Mr. Silk any information about Davis having a disability. Moreover, when Davis filled out his intake with the EEOC, Davis told the EEOC investigator that "he believed that one of three managers who worked at Sodexo told UHS that either he was over the age of 60, or was gay, or was on FMLA." FMLA could be taken for many reasons outside of a disability, so claiming that Sodexo had notice of his disability through being on FMLA is too tenuous of an argument to provide support for Davis's allegations. Scribner testified that the did not have any work accommodations for a disability while he was in the senior manager position for Summerlin Hospital. Scribner testified that he had no personal knowledge of anyone from Sodexo sharing information with someone from UHSDINC or VHS about his disability.

Here, Plaintiffs merely respond that they were discriminated against because of their disabilities, go on to recite the definitions of terms in the statutory scheme ("employer" and "disability"), and broadly suggest that they were limited in performing major life activities including working.

Although Plaintiffs are right that they applied for the positions while they were on medical leave, there is no other fact on the record suggesting that Defendants did not hire them because of Davis' anxiety disorder and Scribner's lumbar radiculopathy and spinal stenosis. The Court finds that Plaintiffs have not sufficiently rebutted Defendants' arguments and grants summary judgment as to the ADA claim.

### VI.    CONCLUSION

**IT IS SO ORDERED** that Defendants' Motion for Summary Judgment is GRANTED as to Mr. Davis' sex discrimination and ADA claims and as to Mr. Scribner's ADEA claims, sex discrimination claims, and ADA claims; the Motion is DENIED as to Mr. Davis' ADEA claim against all Defendants.

**IT IS FURTHER ORDERED** that Mr. Davis and Defendants must file a proposed Joint Pre-Trial Order by **October 30, 2023**.

DATED: September 30, 2023

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**